OPINION OF THE COURT
Beverly S. Cohen, J.
This action to recover under an unsecured irrevocable letter *352 of credit issued by defendant for its customer, the infamous Wedtech Corporation, has had a long and tortured history through the courts. The trial held before me on April 19, 1994 brings it close to conclusion.
PRIOR PROCEEDINGS
Plaintiff, the beneficiary under an irrevocable letter of credit issued by defendant Citibank for its customer, Wedtech, initially commenced this action by moving for summary judgment in lieu of complaint under CPLR 3213, to recover $189,056 due on four dishonored drafts which were presented for payment between May 13 and May 20, 1987. Although a default was entered (see, Ross Bicycles v Citibank, 134 AD2d 181), defendant’s default was opened (Ross Bicycles v Citibank, 149 AD2d 330) and summary disposition was denied as defendant raised a defense of fraud in the letter of credit transaction (see, Ross Bicycles v Citibank, 161 AD2d 473).
When forced to commence a plenary action, plaintiff sued to recover $590,000, the balance secured by the letter of credit which remained unpaid. The defendant successfully avoided payment by raising a myriad of defenses, all of which were ultimately stricken (see, Ross Bicycles v Citibank, 178 AD2d 388).
DECISION DIRECTING TRIAL
Thereafter, by decision dated October 23, 1992, the defendant’s motion for summary judgment was denied and plaintiff was awarded summary judgment on the four dishonored drafts totalling $189,056.
This court held that after Citibank had dishonored those four drafts requesting payment, plaintiff Ross Bicycles was not obliged to continue futilely presenting drafts and could recover for the anticipatory breach of the balance of the letter of credit. The court went on to hold that to establish its right to recovery, however, Ross Bicycles was required to show that it would have been in a position to ship goods (i.e., United States Postal Service mail containers) and present drafts for the amount of the balance of the letter of credit.
This decision was affirmed by the Appellate Division stating that this court "properly determined” that to establish damages plaintiff must show "but for Citibank’s wrongful repudiation, it would have been ready, willing and able to fulfill its *353 obligations under the contract” (Ross Bicycles v Citibank, 200 AD2d 379, 380).
THE TRIAL
The only issue remaining to establish liability on plaintiffs claim of anticipatory breach on the balance of the letter of credit tried by the court in the trial held on April 19, 1994 was whether plaintiff was ready, willing and able to comply with its obligations under the underlying contract which would have entitled it to present further drafts to defendant for payment under the letter of credit.
Plaintiff clearly established that it could easily have fulfilled the remainder of the contract and satisfy the terms of the letter of credit through testimony of its principal Sherwood Ross.
Defendant was precluded from introducing evidence that plaintiff suffered no damages under the underlying contract with Wedtech because it delivered mail containers to the Postal Service under a separate subsequent contract.
MEASURE OF DAMAGES
A review of the record of the proceedings in this action does not support plaintiff’s contention that the amount of plaintiff's damages is already established as the law of the case. Although defendant in the context of its summary judgment motion had unsuccessfully raised the argument that plaintiff suffered no damages, that does not establish as the law of the case that plaintiff is entitled to the balance of the face amount of the letter of credit. In denying defendant summary judgment, the issue of the measure of damages was not reached and not specifically addressed either by this court or by the Appellate Division. Now that the record is fully developed, the court will address the measure of plaintiffs damages.
The letter of credit issued by defendant in favor of plaintiff incorporated by its terms the Uniform Customs and Practice for Commercial Documentary Credits (UCP), promulgated by the International Chamber of Commerce (ICC). Although not having the force of legislation, the UCP is an internationally accepted codification of banking practice and custom regarding letters of credit. When a letter of credit expressly incorporates the UCP, it becomes a part of the undertaking of the parties and its provisions have binding force.
Plaintiff in claiming the face amount of the draft relies on *354 those provisions which state that the letter of credit is separate from the underlying contract. UCP article 3 provides that "credits, by their nature are separate transactions from the sales or other contract(s) on which they may be based and banks are in no way concerned with or bound by such contracts), even if any reference whatsoever to such contracts) is included in the credit”. UCP article 4 restates the independence principle that "[i]n credit operations all parties concerned deal in documents, not in goods, services and/or other performances to which the documents may relate”. UCP article 10 provides that "[a]n irrevocable credit constitutes a definite undertaking of the issuing bank, provided that the stipulated documents are presented”. (Uniform Customs and Practice for Commercial Documentary Credits, ICC Publ No. 400 [1983 rev].)
The independence doctrine is best understood when looked at in the context of the contracts and parties typically involved:
(1) The contract of the bank (Citibank) with its customer (Wedtech) by which the bank agrees to issue the letter of credit to the beneficiary (Ross Bicycles).
(2) The underlying contract between the bank’s customer and the beneficiary which results in the letter of credit issuance.
(3) The letter of credit, itself, which is a contract between the issuing bank and the beneficiary by which the bank agrees to pay the drafts drawn under the letter of credit and presented to it by the beneficiary if they are accompanied by the requisite documents.
The New York courts have recognized that the doctrine of independent contracts provides that the issuing bank’s obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement (First Commercial Bank v Gotham Originals, 64 NY2d 287; Shanghai Commercial Bank v Bank of Boston Intl., 53 AD2d 830). The rule of the independence of the letter of credit from the underlying transaction is based on two policy considerations. First, the issuing bank can assume no liability for the performance of the underlying contract because it has no control over making the underlying contract or over selection of the beneficiary (see, First Com *355 mercial Bank v Gotham Originals, supra, at 294). Second, the letter of credit would lose its commercial vitality if, before honoring drafts, the issuing bank were obliged to look beyond the terms of the letter of credit to the underlying contractual controversy between its customer and the beneficiary (see, Bank of Newport v First Natl. Bank & Trust Co., 687 F2d 1257, 1261 [8th Cir 1982]). Whatever the bank pays upon the letter of credit it can recover from its customer ordinarily. If the customer feels that the beneficiary was not entitled to that amount, then these parties can litigate under their contract (see, Shanghai Commercial Bank v Bank of Boston Intl., 53 AD2d 830). In fact, one of the main purposes of the letter' of credit is to place the seller in this stronger position of having the funds while the parties litigate their underlying contract disputes (see, Lowenfeld, International Private Trade, The Letter of Credit, § 5.3 [2d ed] ["Disputes between the buyer and seller * * * do not concern the bank; the irrevocable letter of credit is not subject to a 'stop payment’ order”]).
Where the issuer of the letter of credit dishonors a proper demand for payment, as defendant Citibank did in this case and therefore further presentation of documents is excused, it is consistent with the independence principle to regard the damages question as beyond the purview of the bank’s inquiry rights, that is, as independent of any proof that the beneficiary suffered a loss on the underlying agreement. If the documents called for by the letter of credit had been produced, the bank would have no right to inquire into plaintiff’s actual costs of production or profit margins. When the issuing bank breaches the credit promise, there is no reason to enlarge the bank’s entitlement to challenge the beneficiary. The way to make the beneficiary whole and provide it with the full benefit of the credit promise is to require the issuer to pay damages in the face amount of the credit balance (see, Dolan, Letters of Credit 9.02 [5] [a] [2d ed 1991]). Any other interpretation as to damages would defeat the basic purpose of such a letter of credit of providing a means of assuring payment cheaply by eliminating the need for, or the power of, the issuer to police the underlying transaction. This approach preserves the efficacy of the letter of credit in commercial transactions to provide the seller with a means of obtaining prompt payment. "If reputable financial institutions are able to weasel out of their obligation under their letters of credit, they will do a great disservice to business in this country” (Engel Indus. v First Am. Bank, 798 F Supp 9, 15-16 [D DC 1992]).
*356 Notably, the UCP makes no distinction between commercial credits (those that serve the sale of commodities) and standby credits (those that guarantee the performance of an obligation) (see, UCP art 1). In the latter case, the credit is often used as a vehicle for collecting stipulated damages or to provide funds while the damages accrue (see, Eakin v Continental Ill. Natl. Bank & Trust Co., 875 F2d 114 [7th Cir 1989]), and to require proof of damages in such cases would entirely defeat the purpose of the credit. In either case, if the beneficiary of a credit can be required to establish damages before he can recover for dishonor, it will be efficient for an issuer to dishonor and put the beneficiary to his proof.
A rule that would require the beneficiary to demonstrate damages before recovering for dishonor stands to undermine the letter of credit as a commercial mechanism which is so important to New York business. Similarly, requiring the beneficiary to mitigate offends the principle that the letter of credit is independent from the underlying sale of goods contract.
Although the UCC provides for remedies under a letter of credit in the context of the underlying contract, the New York version of the UCC specifically provides that the UCC does not apply to letters of credit where, as here, the parties agree to be governed by the UCP (UCC 5-102 [4]; Shanghai Commercial Bank v Bank of Boston Intl., 53 AD2d 830, supra; Decor by Nikkei Intl. v Federal Republic of Nigeria, 497 F Supp 893, 907 [SD NY 1980]). This New York provision is unique (see, Atari, Inc. v Harris Trust & Sav., 599 F Supp 592, 600 [ND Ill 1984]). It was proposed and enacted by the Legislature at the request of the New York City banks, represented by the New York Clearing House Association, because they believed that the UCC would interfere with established letter of credit business governed by the UCP. The courts have acknowledged the importance to New York, as a world financial center, of the vast amount of letter of credit business handled by New York banks (Zeevi & Sons v Grindlays Bank, 37 NY2d 220).
While this particular transaction did not involve international commerce, the parties elected to be governed by the UCP and the court must give effect to their contract. Although in the absence of any conflict with the UCP the courts may still look to the UCC provisions (United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 258, n 2), the court determines that the UCC rule on damages which requires *357 reference to the underlying contract is in conflict with the purpose of the letter of credit under the UCP.
When the contracts are viewed as independent as directed by the UCP, the dishonor of the irrevocable credit is more akin to the dishonor by an acceptor of a negotiable instrument that is properly payable than it is to a breach of contract for the sale of goods (see, Dolan, Letters of Credit, op. cit). The bank in its independent undertaking has in effect agreed to buy the series of drafts presented, representing the shipments, up to the limit of the credit. Therefore, plaintiff’s damages must be measured by the face amount of the irrevocable letter of credit which was the measure of defendant’s undertaking which was wrongfully repudiated.
Upon Citibank’s wrongful dishonor of the drafts presented, plaintiff was relieved of its obligation under the letter of credit to continue to present documents, but was obliged to, and did on this trial, show that it would have been in a position to do so and satisfy the terms of the letter of credit entitling them to payment. As the only contract governing the relationship of the parties to this action is the letter of credit, to look beyond the document production to the performance of the underlying contract to determine the measure of damages would violate the independence principle. Thus, the court will not apply the UCC rule on damages, as urged by defendant, as it clearly conflicts with the independence principle enshrined by the UCP which the parties chose to govern their contract.
Defendant’s argument that plaintiff may reap a windfall is irrelevant when viewed in the context of the independence principle. Nor is there an issue of double recovery here as it is not contended that plaintiff has been compensated by Wedtech for Wedtech’s breach of the underlying contract. This case is distinguishable from that relied on by defendant, Decor by Nikkei (497 F Supp, supra, at 912), which involved a contract to supply cement to the Nigerian government with the letter of credit issued by the Nigerian Central Bank. There, plaintiff sued both the Nigerian government which had directed its Central Bank to dishonor the letter of credit and the Bank. The court held that plaintiff could not recover lost profits twice, once under the contract, and again under the letters of credit (supra, at 912, n 11). In that case, because of the relationship between the buyer and the bank the court considered the letters of credit as merely the means by which plaintiffs were to be paid. In contrast here, plaintiff has elected, as it is entitled to, to sue only on the Bank’s "definite *358 undertaking”, a separate independent credit contract. Thus, the court’s approach to the measure of damages in Decor by Nikkei (supra) is not controlling in the different factual situation presented here.
Finally, the court finds that the evidence that plaintiff subsequently obtained a separate contract from the United States Postal Service does not relieve defendant of its default in payment on the credit contract in issue and is irrelevant to the issue of the measure of damages. The court precluded evidence at trial pertaining to the subsequent independent contracts plaintiff obtained directly from the government. The court notes that is has not considered the posttrial submission of an affidavit of the expert witness called by defendant at trial.
CONCLUSION
Plaintiff shall recover the balance of the letter of credit in the amount of $400,944 with interest (see, Optopics Labs. Corp. v Savannah Bank, 816 F Supp 898 [SD NY 1993]) from the date of the anticipatory breach which the court fixes to be May 20, 1987, the date on which the last of the dishonored drafts was presented.
The clerk is directed to enter judgment in plaintiff’s favor against defendant in the sum of $400,944 with interest thereon from May 20, 1987.