**LOUISVILLE MALL ASSOCIATES, LP; Manchester Mall Associates, LP; Corbin Mall Associates, LP; Shepherdsville Mall Associates, LP; Fairlea Mall Associates, LP; and Robert M. Greene, Appellants,**

v.

**WOOD CENTER PROPERTIES, LLC, Appellee.**

Nos. 2010–CA–000933–MR, 2010–CA–001255–MR.

Court of Appeals of Kentucky.

Jan. 27, 2012.

Myrle L. Davis, Louisville, KY, for appellants.

Gregory P. Parsons, Laura M. Bennett, Lexington, KY, for appellee.

Before ACREE and STUMBO, Judges; LAMBERT,[1] Senior Judge.

## OPINION

ACREE, Judge:

Appellants, Robert B. Greene (Greene) and Louisville Mall Associates, LP, Manchester Mall Associates, LP, Corbin Mall Associates, LP, Sheperdsville Mall Associates, LP, and Fairlea Mall Associates, LP (collectively, the "Mall Appellants")[2] bring these consolidated appeals from a judgment and two post-judgment orders of the

Oldham Circuit Court. Greene first appeals from the circuit court's order granting appellee, Wood Center Properties (WCP), summary declaratory judgment claiming the circuit court erroneously interpreted the Letter of Credit at issue. We find no reversible error in the circuit court's rulings respecting this issue. In the second appeal, Greene first contends the circuit court improperly denied his motion pursuant to Kentucky Rules of Civil Procedure (CR) 60.02. We find Greene's CR 60.02 motion procedurally deficient and affirm the circuit court's first post-judgment order. Greene next asserts the circuit court improperly granted WCP's motion for attorney's fees. We agree and reverse the circuit court's second post-judgment order. Accordingly, we affirm in part and reverse in part, and remand for the entry of an order consistent with this opinion.

### Facts and Procedure

In 2007, WCP entered into a Purchase and Sale Agreement whereby it agreed to purchase five shopping centers from the Mall Appellants. Greene is the principal owner of the Mall Appellants. While performing its due diligence, WCP discovered environmental contamination at the Crestwood Shopping Center, one of the shopping centers it intended to purchase. The contamination occurred when a prior shopping center tenant, Crestwood Coin Laundry (Tenant), spilled hazardous chemicals used in its dry cleaning business. As a result of the contamination, WCP chose not to purchase Crestwood Shopping Center, and the parties amended the Purchase and Sale Agreement to reflect WCP's decision.

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute 21.580.

2. Unless indicated otherwise, a reference in this opinion to Greene encompasses both Greene and the Mall Appellants.

Shortly thereafter, Greene offered to provide WCP with an irrevocable letter of credit, issued by M & T Bank, in the amount of $200,000.00 (Letter of Credit). The Letter of Credit's purpose was to insulate WCP from liability and fund the environmental cleanup if the Tenant failed to do so. With that inducement, the parties again amended the Purchase and Sale Agreement reinstating Crestwood Shopping Center as one of the properties being purchased by WCP (Third Amendment). Paragraph two of the Third Amendment provided:

> At closing, Robert M. Greene, individually, shall deliver an irrevocable letter of credit for the benefit of Wood Center Properties, LLC in the amount of Two Hundred Thousand Dollars ($200,000.00) drawn on M & T Bank. This letter of credit shall extend for one (1) year from the date of Closing, and shall automatically renew for one (1) additional year unless Notice of non-renewal is given to [WCP] at least 60 days prior to the expiration date on the face of the Greene Letter of Credit.

This same paragraph also included specific draw terms, authorizing WCP to draw on the Letter of Credit only if, *inter alia*, the Tenant failed to "proceed with mitigation or regulatory compliance with respect to the contamination in a timely manner in the reasonable discretion of" WCP. However, if WCP chose to draw on the Letter of Credit, the Third Amendment expressly provided that the "amount payable under the [Letter of Credit] shall be equal to [WCP's] actual out-of-pocket costs for the environmental cleanup without consider- ation of [WCP's] administrative or legal expenses."

On June 13, 2007, M & T Bank issued the Letter of Credit for the benefit of WCP. The Letter of Credit contained an original expiration date of June 12, 2008. However, it also provided:

> It is a condition of this credit that it shall be deemed automatically extended without amendment for one (1) year from the expiration date hereof, *or any future expiration date* [emphasis added], unless sixty (60) days prior to any expiration date M & T Bank notifies [WCP] in writing that M & T Bank elects not to consider this credit renewed for any such additional period.

The Letter of Credit also included a choice-of-law provision, which specified: "[t]his Credit is subject to the International Standby Practices 1998 International Chamber of Commerce Publication No. 590 (the "ISP98").[3] As to matters not governed by the ISP98, this Credit is subject to the laws of New York State as in effect from time to time."

On April 7, 2008, M & T Bank automatically renewed the Letter of Credit for a second year, and provided WCP and Greene with a letter of renewal notifying them that the Letter of Credit's new expiration date was June 12, 2009. On March 6, 2009, M & T Bank sent a second renewal letter to WCP and Greene again giving notice that it was automatically extending the Letter of Credit for a third year and its new expiration date was June 12, 2010.

Immediately after receiving M & T Bank's March 6, 2009 letter, Greene expressed to M & T Bank his view that,

---

**3.** The ISP98 was created by the Institute of International Banking Law and Practice, Inc. and endorsed by the International Chamber of Commerce (ICC). It has been published as ICC Publication Number 590. The Secretary–General, *Report of the Secretary General on the International Standby Practices (ISP98),* ¶ 1, *delivered to the United Nations Commission on International Trade Law,* U.N. Doc. A/CN.9/477 (April 5, 2000) [hereinafter U.N. Report].

based on the Third Amendment, the Letter of Credit was only valid for two years and should expire on June 12, 2009. Following several conversations between M & T Bank and Greene regarding the Letter of Credit's expiration date, Greene requested that M & T Bank not renew the credit. Despite Greene's request, M & T Bank failed to send a non-renewal letter to WCP.

On July 27, 2009, Greene contacted WCP claiming the Letter of Credit had expired on June 12, 2009, and requesting that it be returned. As a result of the controversy between WCP and Greene concerning the Letter of Credit's validity, on September 18, 2009, WCP filed a declaratory judgment action in Oldham Circuit Court requesting that the circuit court determine whether the Letter of Credit had been extended to June 12, 2010, and, if so, whether WCP was entitled to draw on the Letter of Credit. Shortly thereafter, WCP filed a motion for summary declaratory judgment on the grounds that the Letter of Credit, by its terms, unambiguously extended the Letter of Credit's expiration date until June 12, 2010, and, as a result, WCP was entitled to draw on the Letter of Credit. On April 19, 2010, the circuit court entered summary declaratory judgment in WCP's favor.

On May 4, 2010, Greene filed a motion pursuant to CR 60.02 claiming the circuit court mistakenly determined both that the Letter of Credit's expiration date had been extended to June 12, 2010, and that WCP was entitled to draw on the credit. Shortly thereafter, on May 7, 2010, Greene filed a motion to amend its answer to assert a counter-claim against WCP, and a motion to file a third-party complaint against M & T Bank. Further, on May 10, 2010, WCP filed a motion to recover attorney's fees pursuant to the Third Amendment.

While these motions were pending, Greene filed a timely notice of appeal from the circuit court's April 19, 2010 judgment.

On June 7, 2010, the circuit court granted Greene's motion to file a third-party complaint but denied his motion to amend, and granted WCP's motion for attorney's fees. Greene filed a separate notice of appeal from these orders. On August 16, 2010, this Court ordered the two appeals consolidated.

### Issues on Appeal

In the first appeal, Greene takes issue with the circuit court's conclusion that WCP was entitled to summary declaratory judgment because the Letter of Credit's expiration date extended until June 12, 2010, and, as a result, WCP was entitled to draw on the credit. In his second appeal, Greene contends the circuit court erred in denying his request for CR 60.02 relief and improperly awarded WCP attorney's fees.

### Summary Declaratory Judgment

When a trial court grants summary judgment, the court of appeals must determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). We examine the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991). When reviewing a summary judgment order, only legal questions and the existence, or non existence, of material facts are considered. *Lewis v. B & R Corp.,* 56 S.W.3d 432, 436 (Ky.App.2001).

A letter of credit is an agreement between a bank and a beneficiary, made at the request of an applicant, "to honor a

documentary presentation by payment or delivery of an item of value." Kentucky Revised Statute (KRS) 355.5–102(1)(j); N.Y. U.C.C. § 5–102(10). More simply, a letter of credit provides that an issuer, upon presentation of documents specified in the credit, will pay the beneficiary a designated sum of money or deliver to the beneficiary a particular item of value.

▪ Letters of credit primarily fall into two broad categories: commercial letters of credit and standby letters of credit. *See Nissho Iwai Europe PLC v. Korea First Bank,* 99 N.Y.2d 115, 752 N.Y.S.2d 259, 782 N.E.2d 55, 58 (N.Y.2002). A commercial letter of credit is commonly utilized in sale-of-goods transactions as a substitute for money. *Id.* Instead of delivering the purchase price to the seller, the buyer furnishes a commercial letter of credit on which the seller can draw by delivering documentation that the goods have been shipped or the underlying contract with the buyer fulfilled. Jeffrey S. Wood, *Drafting Letters of Credit: Basic Issues under Article 5 of the Uniform Commercial Code, UCP 600 and ISP98,* Banking Law Journal 103–04 (Feb.2008). In contrast, a standby letter of credit is intended to ensure a party to a contract fulfills his or her obligations, including non-monetary obligations. *See* Wood, *supra,* at 104; *see also Ross Bicycles, Inc. v. Citibank, N.A.,* 161 Misc.2d 351, 613 N.Y.S.2d 538, 541 (N.Y.Sup.Ct.1994) (noting commercial letters of credit "serve the sale of commodities" while standby letters of credit "guarantee the performance of an obligation"). Here, M & T Bank, the issuer, at the request of Greene, the applicant, issued a standby Letter of Credit in the amount of $200,000.00 to WCP, the beneficiary. With this background and terminology in mind, we turn to Greene's purported claims of error.

Greene first contends the circuit court erred in finding the Letter of Credit's expiration date extended to June 12, 2010. In support of his position, Greene asserts M & T Bank was to draft the Letter of Credit in accordance with the terms of the Third Amendment. Consequently, Greene argues the Letter of Credit's expiration date is contingent upon and governed by the Third Amendment. As a result, the Letter of Credit must be read in conjunction with the Third Amendment and the circuit court erred in failing to consider the Third Amendment's precise language limiting the Letter of Credit to two years. In response, WCP argues the Letter of Credit stands independently from the Third Amendment and, as a result, the rights and obligations of the parties to the Letter of Credit do not depend upon any other document, including the Third Amendment.

As a preliminary manner, we must decide what law governs the parties' dispute. WCP, as beneficiary of the Letter of Credit, brought a declaratory rights action seeking to establish the parties' rights pursuant to the Letter of Credit. As noted, the Letter of Credit included a choice of law provision which provided the International Standby Practices 1998, the International Chamber of Commerce, Publication No. 590 (ISP98) governed the credit and, in the absence of relevant provisions, New York law controlled. Despite primarily citing Kentucky law in their briefs to this Court, the parties do not take issue with the Letter of Credit's choice of law provision. Accordingly, we apply the ISP98 and, as needed, New York law. *See* U.N. Report, Annex II, ISP98 Preface ("For the ISP to apply to a standby, an undertaking should be made subject to these Rules by including language such as . . . 'this undertaking is subject to the International Standby Practices 1998' or 'subject to ISP98.' "); KRS 355.5–116 (establishing

that parties to a letter of credit may designate in the credit which jurisdiction's law to apply); N.Y. U.C.C. § 5–116(a) (same).

■ Our analysis begins by examining the interplay between the Letter of Credit and the underlying contract, namely the Third Amendment, between WCP and Greene. ISP98 Rule 1.06(c) provides:

Because a standby is independent, the enforceability of an issuer's obligations under a standby does not depend on: . . . (iii) a reference in the standby to any reimbursement agreement or underlying transaction; or (iv) the issuer's knowledge of performance or breach of any reimbursement agreement or underlying transaction.

Additionally, ISP98 Rule 1.07, titled "independence of the issuer-beneficiary relationship" states: "[a]n issuer's obligations toward the beneficiary are not affected by the issuer's rights and obligations toward the applicant under any applicable agreement, practice, or law." These sections embody what is commonly referred to as the "independence principle," one of the key principles underlying letter of credit law. Wood, *supra*, at 105. The independence principle provides that the underlying contract and the letter of credit are utterly independent of one another. As a result, an issuer must make payment pursuant to a letter of credit "without regard to the relationship between and the relative rights and obligations to each other of (i) the beneficiary and the [applicant] or (ii) the issuer and the applicant." *Id.; see also* N.Y. U.C.C. § 5–103(d); KRS 355.5–103(4).

■ The independence principle is perhaps most easily understood by examining the three distinct and separate contracts which inevitably underlie a letter of credit transaction. *Nissho,* 752 N.Y.S.2d 259, 782 N.E.2d at 59; *First Commercial Bank v. Gotham Originals, Inc.,* 64 N.Y.2d 287, 486 N.Y.S.2d 715, 475 N.E.2d 1255, 1258 (1985). The first is the underlying contract (here the Third Amendment) between the buyer (WCP) and the seller (Greene), which creates the basis for the letter of credit. *Ross Bicycles,* 613 N.Y.S.2d at 540. The second contract is the agreement between the issuer of the letter of credit (M & T Bank) and its customer (Greene) "in which the issuer typically agrees to issue the letter of credit in return for its customer's promise to reimburse it for any payments made under the credit plus a commission[.]" *Gotham Originals,* 486 N.Y.S.2d 715, 475 N.E.2d at 1258. The third contract, the letter of credit itself, is between the issuer (M & T Bank) and the beneficiary (WCP). *Nissho,* 752 N.Y.S.2d 259, 782 N.E.2d at 59; *Gotham Originals,* 486 N.Y.S.2d 715, 475 N.E.2d at 1258.

■ Because the letter of credit and the underlying contract are independent of one another, "reliance may not be had upon the underlying transactions between the beneficiary and the bank's customer for purposes of amplifying [or interpreting] the terms of the letter of credit." *Utica Mutual Insurance Co. v. Walker,* 725 S.W.2d 24, 27 (Ky.App.1987) (applying N.Y. law).

A letter of credit must be interpreted on its face, independent of other contracts and the underlying transaction. The underlying contract between the customer and the beneficiary should not be considered in interpreting the letter of credit, and should not be used to supplement or amplify the terms of the letter of credit or to add obligations thereto.

10 C.J.S. *Bills and Notes* § 400 (2011); *see also Mutual Export Corp. v. Westpac Banking Corp.,* 983 F.2d 420, 423 (2nd Cir.1993) ("[L]etters of credit must be interpreted on their face, independent of

other contracts and the underlying transaction."); *Summit Ins. Co. of N.Y. v. Cent. Nat'l Bank of Houston*, 624 S.W.2d 222, 225 (Tex.Civ.App.1981) (finding a court should not resort to the underlying contract in interpreting a letter of credit). These authorities persuade us that a letter of credit must be interpreted on its face and, absent an ambiguity in the letter of credit,[4] without reliance on or reference to the underlying contract.

█ Further, in the case *sub judice*, the Letter of Credit itself expressly provides that its terms shall not be amplified or interpreted by reference to any outside document, including the Third Amendment.

> This credit sets forth in full M & T Bank's undertaking, and such undertaking shall not in any way be modified, amended, amplified, or limited by reference to any other document, instrument, or agreement referred to herein (except the ISP98); and any such reference shall not be deemed to incorporate herein by reference any document, instrument, or agreement except as set forth above.

Accordingly, we reject Greene's contention that the circuit court erred in failing to consider the Third Amendment in interpreting the Letter of Credit.

█ Our analysis, however, is not complete. We must next determine, based on the express language of the Letter of Credit, whether its expiration date extended to June 12, 2010. Rule 2.06 of the ISP98 provides:

> If a standby expressly states that it is subject to "automatic amendment" by an increase or decrease in the amount available, an extension of the expiration date, or the like, the amendment is effective automatically without any further notification or consent beyond that expressly provided for in the standby. (Such an amendment may also be referred to as becoming effective "without amendment").

ISP98 Rule 2.06(a). Here, the Letter of Credit expressly stated that it automatically extended without amendment for one (1) year from the expiration date set forth in the Letter of Credit, or any future expiration date, unless M & T Bank notified WCP, in writing, that it was electing not to renew the credit. We believe this provision falls squarely within ISP98 Rule 2.06(a), creating a continuously renewing expiration date until M & T Bank notified WCP otherwise.

The Letter of Credit's original expiration date was June 12, 2008. On April 7, 2008, M & T Bank notified Greene and WCP that it was renewing the Letter of Credit and extending the credit's expiration date until June 12, 2009. Subsequently, on March 6, 2009, M & T Bank sent a second renewal letter to WCP and Greene, again notifying them that it was renewing the Letter of Credit and extending the credit's expiration date until June 12, 2010. Though Greene contested M & T Bank's

---

4. As explained, a letter of credit is an independent, *albeit* unique contract. Thus, if a provision of the letter of credit is ambiguous, it may be necessary to resort to general contract principles in order to interpret the letter of credit. Under Kentucky law, " '[i]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and the court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky.2003) (citing *O'Bryan v. Massey–Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky.App.1966)). However, if an ambiguity exists, the court may refer to extrinsic evidence outside the letter of credit in determining the parties' intent. *Crouch v. Crouch*, 201 S.W.3d 463, 465 (Ky.2006).

second renewal letter, M & T Bank did not send WCP a non-renewal letter prior to June 12, 2010. As a result, M & T Bank's March 6, 2009 renewal letter remained in effect, extending the Letter of Credit's expiration date until June 12, 2010.[5]

Greene next claims that, if the circuit court properly determined the Letter of Credit's expiration date had been extended to June 12, 2010, it nonetheless erred in concluding that WCP was entitled to draw on the Letter of Credit because WCP had not complied with the draw terms outlined in paragraph two of the Third Amendment. We disagree.

■ We begin by examining the unique principles of law applicable to letter of credit transactions. As explained above, ISP98 Rules 1.06(c) and 1.07 reiterate that the issuer's obligation to honor the Letter of Credit is independent of the rights and liabilities of the parties to the underlying contract. *See Nissho,* 752 N.Y.S.2d 259, 782 N.E.2d at 59. Shielding a letter of credit from the underlying transaction serves two purposes:

> First, the issuing bank can assume no liability for the performance of the underlying contract because it has no control over making the underlying contract or over selection of the beneficiary. Second, the letter of credit would lose its commercial vitality if, before honoring drafts, the issuing bank were obligated to look beyond the terms of the letter of credit to the underlying contractual controversy between its customer and the beneficiary.

*Ross Bicycles,* 613 N.Y.S.2d at 540–41.

■ Because of the independent nature of a letter of credit, if the beneficiary tenders the required documents speci-

fied in the credit, the issuer must honor the letter of credit regardless of whether the beneficiary has fully performed, or even breached, the underlying contract. *See* ISP98 Rule 106(c)(iv) ("[A]n issuer's obligations under a standby does not depend on . . . the issuer's knowledge of performance or breach of . . . [the] underlying contract."); N.Y. U.C.C. § 5–108(a); *Walker,* 725 S.W.2d at 27 (applying N.Y. law). In fact, "the issuer has neither the duty nor the right to police the underlying bargain between the beneficiary and the [customer]." 3 James J. White & Robert S. Summers, *Uniform Commercial Code* § 26–5 (4th ed.1995); *see also* ISP981.08(a) ("An issuer is not responsible for performance or breach of any underlying transaction."); N.Y. U.C.C. § 5–108(f)(1); *Gotham Originals,* 486 N.Y.S.2d 715, 475 N.E.2d at 1259 ("[The issuer] is not required to resolve disputes or questions of fact concerning the underlying transaction.").

■ Instead, in letter of credit transactions, the issuer deals solely in documents. "Because a standby is documentary, an issuer's obligations depend on the presentation of documents and an examination of required documents on their face." ISP98 Rule 1.06(d). Accordingly, an issuer is duty-bound to pay when the beneficiary presents the documents specified in the letter of credit, not when the beneficiary complies with the underlying agreement. *See Gotham Originals,* 486 N.Y.S.2d 715, 475 N.E.2d at 1259. To state more simply:

> In essence, the letter of credit issuer is saying "if you give me the following pieces of paper that say the following things then I will pay you the stated amount without regard to the terms of

---

5. During the pendency of this litigation, on April 12, 2010, M & T Bank sent WCP a non-renewal letter notifying WCP it was electing

not to renew the Letter of Credit. As a result, the Letter of Credit ultimately expired on June 12, 2010.

my agreements with the applicant or your agreements with the applicant." The issuer is neither expected nor entitled to look beyond the pieces of paper to determine whether the statements they contain are true, or to determine whether under its agreement with the applicant, the beneficiary has the right to make demand under the letter of credit.

Wood, *supra*, at 105–06.

In the present case, to obtain payment under the Letter of Credit, WCP was required to present to M & T Bank a draft that included the name of the issuing bank and identified the specific letter of credit. Also, the Letter of Credit required WCP to present the following documents with the draft: an original copy of the Letter of Credit, and a certificate on WCP's letterhead signed by an authorized official or representative (Certification). Further, the Certification had to include the following statements: "(a) I [the undersigned] am a duly authorized official of [WCP]; (b) This draw is being presented in accordance with the draw terms outlined in paragraph 2 of the Third Amendment to the Purchase and Sale Agreement dated June 11, 2007 between [WCP and the Mall Appellants]; and (c) Beneficiary is hence entitled to and is making a drawing under the credit in the amount of U.S. [$200,000.00]."

Following the circuit court's award of declaratory summary judgment, WCP drew on the letter of credit. WCP complied with the Letter of Credit's draw terms by submitting to M & T Bank a signed draft, the original Letter of Credit, and a proper Certification containing the

precise information requested. In accordance with ISP98 Rules 1.06(d) and 4.01,[6] M & T Bank was only required to examine the documents presented by WCP to determine if they complied with the terms and conditions of the Letter of Credit; M & T Bank was not required to look beyond the documents to determine whether WCP's statement that it complied with the Third Amendment was, in fact, accurate. Wood, *supra*, at 105–06. Because WCP's submission conformed to all the requirements set forth in the Letter of Credit, M & T Bank properly honored the draft and paid out the proceeds. *See* Paul H. Vishny, *Letter of Credit—An Overview*, International Quarterly § 1.04 (Jan.2005) ("As with other credits, it is the documents which are operative. The standby credit, consequently, is a powerful instrument of payment which often places in the hands of the beneficiary a virtually unlimited or uncontrolled power to demand and receive payment.").

It is essential to emphasize that our holding is limited to the narrow issue of whether WCP was entitled to draw on the Letter of Credit and whether M & T Bank properly complied. We are not determining whether WCP satisfied its underlying obligations to Greene, as set forth in the Third Amendment. *See In re Eastern Freight Ways, Inc.*, 9 B.R. 653, 662 (S.D.N.Y.1981) (noting that a letter of credit only deals with the "mechanics for draw down and not with the purpose for which the proceeds were made available. This aspect is dealt with by the underlying agreement" between the beneficiary and the applicant). We are simply holding that, as between WCP and M & T Bank, in

6. ISP98 Rule 4.01 provides: (a) demands for honour of a standby must comply with the terms and conditions of the standby and (b) whether a presentation appears to comply is determine by examining the presentation on its face against the terms and conditions stated in the standby as interpreted and supplemented by these Rules which are to be read in the context of standard standby practices.

order for WCP to compel M & T Bank to perform, WCP had to comply with the Letter of Credit's draw terms. WCP satisfied this obligation when it submitted to M & T Bank the exact documentation required by the Letter of Credit. If WCP improperly certified to M & T Bank that it had complied with the terms of the Third Amendment, our holding does not preclude Greene from bringing a breach of contract claim against WCP under the Third Amendment. *See Ross Bicycles*, 613 N.Y.S.2d at 541 (noting that an applicant may file suit against the beneficiary based on the underlying contract).

In sum, we find no genuine issues of material facts exist and, as a matter of law, the circuit court properly awarded WCP summary declaratory judgment.

### CR 60.02 Relief

Green next argues the circuit court erred in refusing to grant its motion seeking relief pursuant to CR 60.02. Greene asserts it prepared its CR 60.02 motion to clarify the circuit court's order which mistakenly granted WCP the right to draw on the Letter of Credit without recognizing that WCP had not complied with the draw terms set forth in paragraph two of the Third Amendment. In response, WCP contends the circuit court correctly denied Greene's CR 60.02 motion because it failed to assert grounds sufficient to warrant CR 60.02 relief. Instead, Greene's CR 60.02 motion was, WCP argues, a CR 59.05 motion filed outside the applicable ten-day window. WCP's argument is well-taken.

▇▇▇▇ The decision to deny a CR 60.02 motion is vested in the trial court's sound discretion and for that reason, "decisions rendered thereon are not disturbed unless the trial judge abused his/her dis-

cretion." *Kurtsinger v. Bd. of Trustees of Ky. Ret. Sys.,* 90 S.W.3d 454, 456 (Ky. 2002); *Bethlehem Minerals Co. v. Church and Mullins Corp.,* 887 S.W.2d 327, 329 (Ky.1994). The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

▇▇▇▇ Relief pursuant to CR 60.02 is an extraordinary remedy which should be cautiously granted. *Baze v. Commonwealth,* 276 S.W.3d 761, 765 (Ky.2008); *Brozowski v. Johnson,* 179 S.W.3d 261, 263 (Ky.App.2005). The rule may be invoked in six particular instances: "(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence; (c) perjury or falsified evidence; (d) fraud affecting the proceedings; (e) the judgment is void; or (f) any other reason of an extraordinary nature justifying relief." *Kurtsinger,* 90 S.W.3d at 456. A chief factor guiding the grant of CR 60.02 relief is the moving party's inability to present his claim prior to the entry of the order sought to be set aside. *Fortney v. Mahan,* 302 S.W.2d 842, 843 (Ky.1957); *Brozowski,* 179 S.W.3d at 263 (explaining CR 60.02 serves a dual purpose: "to bring before a court errors which (1) had not been put into issue or passed on, and (2) were unknown and could not have been known to the moving party by the exercise of reasonable diligence and in time to have been otherwise presented to the court").

▇▇▇▇ In his CR 60.02 motion, Greene complained the circuit court mistakenly determined both that the Letter of Credit was valid until June 12, 2010, and that WCP was entitled to draw on the letter of credit.[7] Greene presented these same

---

7. Though Greene failed to specify in his motion under which subsection he sought CR

60.02 relief, because he consistently argues

grounds to the circuit court in its response to WCP's motion for summary judgment and during oral argument on that motion. Hence, Greene had a full, fair, and lengthy opportunity to convey his position and theories to the circuit court before it entered summary declaratory judgment. Upon careful consideration, the circuit court rejected Greene's position, as do we. CR 60.02 is not a vehicle for parties to relitigate previously determined issues. *Baze*, 276 S.W.3d at 765.

■ Instead, this issue would have been the proper subject for a CR 59.05 motion. CR 59.05 permits a circuit court to "alter or amend a judgment, or to vacate a judgment and enter a new one" if a proper motion is filed within ten days of the final judgment's entry. CR 59.05; *Bowling v. Kentucky Dept. of Corrections*, 301 S.W.3d 478, 483 (Ky.2009). Here, Greene chose not to file a CR 59.05 motion. Such failure constitutes a knowing waiver of any arguments Greene could have raised in a CR 59.05 motion, such as the ones presented to the circuit court in Greene's CR 60.02 motion and raised before this Court, and eliminates all justification under CR 60.02 for granting him relief now. *See Goldsmith v. Fifth Third Bank*, 297 S.W.3d 898, 903 (Ky.App.2009).

### Attorney's Fees

Finally, Greene contends the circuit court improperly granted WCP attorney's fees because the declaratory action filed by WCP was not an action for the interpretation or enforcement of the Third Amendment. Instead, claims Greene, the actual controversy involved the Letter of Credit issued by M & T Bank. In response, WCP argues that, in its declaratory complaint, it asked the circuit court to declare the parties' rights under the Third Amendment

and the Letter of Credit. WCP also contends that, in order for the circuit court to conclude that the Letter of Credit had been extended and WCP had a right to draw on it, the circuit court had to reject Greene's assertions that the Letter of Credit was modified or limited by the Third Amendment.

■ This Commonwealth adheres to the "American Rule" which provides that "attorney's fees are not recoverable in the absence of a statutory or contractual provision to the contrary, or with certain equitable exceptions." *Gibson v. Kentucky Farm Bureau Mutual Ins. Co.*, 328 S.W.3d 195, 204 (Ky.App.2010); *see also Lyon v. Whitsell*, 245 S.W.2d 926 (Ky.1952); *Batson v. Clark*, 980 S.W.2d 566, 577 (Ky.App. 1998) (finding Kentucky's general rule concerning attorney's fees does not prohibit a trial court from invoking its power in equity to issue an award of attorney's fees). Recognizing this, to justify a fee award, WCP relies on paragraph 24(i) of the Purchase and Sale Agreement, which provides:

> If an arbitration, suit or action is filed to interpret or enforce this Agreement, the prevailing party shall be entitled to be awarded its reasonable attorney's fees and disbursements through all appeals in addition to other costs and disbursements allowed by law, including those incurred on appeal.

■ In its complaint, WCP asked the circuit court to declare the parties rights under the Letter of Credit. In doing so, the circuit court interpreted the Letter of Credit, not the Purchase and Sale Agreement or its amendments. In fact, as previously explained, relying on the underlying contract in interpreting the Letter of Credit would constitute reversible error. Because the circuit court confined its in-

---

the circuit court was "mistaken," we assume

Greene sought relief under subsection (a).

terpretation to the Letter of Credit, the attorney's fees provision of the Purchase and Sale Agreement's does not provide a basis for awarding attorney's fees. As WCP has not made a claim for a fee award under the Letter of Credit or any Kentucky state statute, without the Purchase and Sale Agreement, the authority for attorney fees vanishes. *See Batson,* 980 S.W.2d at 577. As there was neither contractual nor statutory authority for an award of attorney's fees, nor any justifiable equitable grounds, we conclude the circuit court improperly awarded WCP attorney's fees and we reverse on this issue.

### *Conclusion*

The Oldham Circuit Court properly entered summary declaratory judgment in favor of WCP. Additionally, while the circuit court did not abuse its discretion in denying Greene's CR 60.02 motion, it improperly awarded WCP's motion for attorney's fees. Accordingly, we affirm in part and reverse in part, and remand for the entry of an appropriate order consistent with this opinion.

ALL CONCUR.