RENDERED: JUNE 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1433-MR

KAREN SLOAN; BRIAN VANDER
BOEGH; LORI VANDER BOEGH;
AND MARK VANDER BOEGH                                 APPELLANTS

|  | APPEAL FROM MCCRACKEN CIRCUIT COURT |
| v. | HONORABLE TIMOTHY KALTENBACH, JUDGE |
|  | ACTION NO. 10-CI-00634 |

BANK OF OKLAHOMA (NOW
KNOWN AS "BOKF"), N.A., AS
TRUSTEE OF THE CHARLES R.
JONES, SR. INTER VIVOS TRUST
DATED MAY 1, 1973, AND THE
EULA KATHLEEN JONES
TESTAMENTARY TRUST U/W/D
OCTOBER 24, 1967                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

LAMBERT, JUDGE: Karen Sloan, Brian Vander Boegh, Lori Vander Boegh, and

Mark Vander Boegh (the Vander Boeghs) have appealed from the October 27,

2020, order of the McCracken Circuit Court denying their amended Kentucky Rules of Civil Procedure (CR) 60.02 motion to vacate the judgment entered July 28, 2016. Finding no abuse of discretion, we affirm.

The underlying case was originally filed in the McCracken Circuit Court in 2010, and it has previously been before this Court. We shall rely upon the factual and procedural backgrounds set forth in the opinions addressing the earlier appeals.[1] The first appeal, decided in *Vander Boegh v. Bank of Oklahoma, N.A.*, 394 S.W.3d 917 (Ky. App. 2013) (*Vander Boegh I*), was taken by the Vander Boeghs, who were minority beneficiaries of two trusts, from an order and judgment addressing the construction of trust documents and a petition for instructions that had been filed by the trustee, Bank of Oklahoma, N.A. (BOK, BOKF, or the Bank). This was Phase I of the bifurcated litigation (the other phase addressed the Vander Boeghs' counterclaims for the Bank's breach of fiduciary and contractual duties and for the negligent administration of these duties, which we shall discuss later).

> This appeal involves the Three Rivers limestone quarry, located in Livingston County, Kentucky. The Three Rivers [Quarry] is the sole asset of two separate trusts (i.e., the "Charles R. Jones, Sr., inter Vivos Trust

---

[1] The certified record in this appeal begins in early 2020 and, therefore, is missing ten years of filings and video recordings from Phase I and Phase II of the case. However, the defendants' compulsory counterclaim and amended counterclaim as well as the Bank's first amended complaint are attached to the prehearing statement and supplemental prehearing statement. And the July 28, 2016, final judgment (the subject of the motion to vacate) is attached to the parties' briefs.

dated May 1, 1973," and the "Eula Kathleen Jones Testamentary Trust U/W/D October 24, 1967"), and it is subject to a ninety-nine-year lease agreement with Martin Marietta Materials, Inc.[2] The total royalties paid (and later escrowed) by Martin Marietta between January 1995 and December 31, 2010, have totaled over $17,000,000. Sometime between January and March of 2010, the trusts received a report from an auditor they had hired to monitor Martin Marietta's performance of its lease obligations and quarrying activities at Three Rivers. The report indicated that between 1995 and 2010 Martin Marietta had incorrectly used a forty-five-ton downward adjustment to calculate several of the royalty payments it owed the trusts, resulting in an alleged shortfall estimated at $104,000.

The Vander Boeghs are beneficiaries holding collective minority interests (approximately 3/16ths) in both of the above-referenced trusts. After they were informed of the results of the audit, they demanded that the trustee of the trusts, BOK, refuse all future royalty payments from Martin Marietta and issue Martin Marietta a notice of default pursuant to the terms of the lease, which could potentially give the trusts the right to terminate the lease if Martin Marietta did not provide a timely cure. The Vander Boeghs further believed that Martin Marietta had committed other breaches of the lease which also required BOK to send Martin Marietta a notice of default. Specifically, they suspected that Martin Marietta had underpaid royalties besides those identified in the audit and that Martin Marietta had committed a violation of its Three Rivers mining permit which, they asserted, amounted to a breach of the lease. They asserted that if BOK failed to give Martin Marietta a notice of default under these circumstances, it could result in a waiver of these alleged breaches and, thus,

_____

[2] "The parties stipulate that eight months following this action, LaFarge North America, Inc., acquired Martin Marietta's rights under the lease at issue in this matter. For the purpose of this appeal, however, Martin Marietta was the lessee at all relevant times." *Id*. at 922 n.3.

-3-

could amount to a breach of the fiduciary duties that BOK owed to the beneficiaries pursuant to the terms of the trusts.

BOK did not send Martin Marietta any notice of default, but it began refusing royalty payments from Martin Marietta in April, 2010. Martin Marietta continued to make payments, but placed those payments in escrow. A few months later, other beneficiaries collectively holding the majority interests (approximately 13/16ths) in the respective trusts (the Armstrongs)[3] requested that BOK resume accepting royalty payments and continue refraining from issuing a notice of default to Martin Marietta. Because the Vander Boeghs' demands conflicted with those of the Armstrongs, BOK filed the instant action in McCracken Circuit Court pursuant to Kentucky Revised Statutes (KRS) 386.675[4] for instruction regarding how to fulfill its fiduciary obligations to the beneficiaries pursuant to the terms of the trust instruments under the circumstances presented.

---

[3] As to the other beneficiaries of the trusts, this Court explained:

> [T]he Armstrongs are beneficiaries who collectively hold the majority interests in the two trusts at issue in this litigation. They shared the same representation at the circuit court level and consist of appellees James G. Armstrong, Scott Charles Armstrong, Jeffrey James Armstrong, Amy Ruth Armstrong, Jimmy Brien Jones, Charles R. Jones, Vincent Keith Jones, Moira Isobel Jones, Kimberly Faith Jones, Kyle Patrick Jones, Rhonda Tippett, Sally Jo Lloyd, Lisa K. Price, and Donna Puryear. Although they have not actively participated in this appeal, we note that these beneficiaries now represent themselves *pro se*. Kym L. Bichon represented herself below *pro se*, continues to do so on appeal, and her interests are also adverse to the Vander Boeghs. Bichon has not actively participated in this appeal, either.

*Id*. at 919 n.2.

[4] KRS 386.675 was repealed in HB 78 with an effective date of July 15, 2014.

-4-

*Id.* at 922-23.

Here, no party disputes that BOK properly requested instruction from the circuit court in this matter. Moreover, BOK's KRS 386.675 action most closely approximates the species of instruction action discussed in the Restatement (Third) of Trusts § 71 (2007), comment d; in relevant part, that comment provides "a court may be justified in accepting as 'reasonable' doubt or uncertainty a trustee's legitimate concern that a particular beneficiary's insistence upon an unreasonable position might, without instruction on the matter, lead to significantly more costly and disruptive litigation[.]"

With that said, the controversy in this matter originates in large part from an amended provision contained within the Martin Marietta lease and the question of whether, as the Vander Boeghs contend, that provision abrogates BOK's power as trustee to exercise its discretion to act in what it perceives to be the best interests of the beneficiaries in various instances of default. The provision at issue states:

Default. Should Lessee default in the payment of any sum hereunder when due, the Lessor immediately shall provide notice of such default to Lessee. Lessee shall have five (5) business days from the receipt of such notice to cure any such default and the payment of any sum due hereunder. In the event that Lessee has not cured the default, then Lessor may at its option cancel and terminate this Lease and the Original Lease by giving written notice so to do and all rights of Lessee hereunder and under the Original Lease shall be terminated as of the mailing by United States Certified or Registered Mail of such notice of cancellation and termination. Should Lessee default in any other of its obligations

-5-

hereunder or under the Original Lease, then Lessor shall by written notice advise Lessee specifying such other default and if such other default is not cured within thirty (30) days from the mailing by United States Certified or Registered Mail of such notice, then all rights of Lessee shall terminate hereunder and the Original Lease and this Lease shall be terminated. Failure of Lessor to exercise the option herein given it or any right hereunder at any time or times shall not preclude Lessor from the exercise thereof at any subsequent time or times for any subsequent default.

In its petition, BOK asked the circuit court to determine whether this provision, taken in conjunction with the circumstances of the case and the several other instruments defining its fiduciary obligations as trustee, permitted it the discretion to refrain from issuing Martin Marietta a notice of default relating to the forty-five-ton downward adjustment issue and do the following instead: 1) resume receiving, depositing, and distributing royalty payments from Martin Marietta from and after April, 2010, in accordance with the terms of the trust instruments; 2) make a request of Martin Marietta to pay $104,000 to the trusts for the estimated royalty shortfall that occurred between 1995 and 2010; 3) request that Martin Marietta pay all future royalties to the trusts without making the forty-five-ton adjustment noted above; 4) request that Martin Marietta maintain records of the limestone it shipped out of Three Rivers for eighteen to twenty-four months; and 5) use its discretion to exercise any legal remedies (including abandoning the claim entirely, but short of terminating the lease) to resolve the shortfall issue.

*Id*. at 924-25.

-6-

This Court summarized the circuit court's lengthy judgment as follows:

> On March 23, 2011, following a bench trial on these matters, the circuit court entered a judgment declaring that under the terms of the trust instruments taken as a whole BOK retained the power to exercise its discretion to not only refrain from issuing notices of default relating to the Martin Marietta lease, but to also resolve any monetary or non-monetary default without seeking to terminate the lease.

*Id*. at 926. The circuit court then set forth its reasoning:

> 46. In September of 2005, BOK agreed to serve as the successor Trustee of the Jones Family Trusts pursuant to the terms of a Letter of Understanding. The Letter of Understanding sets forth numerous obligations of BOK as Trustee, including, but not limited to:
>
>> (1) Preparation and distribution to beneficiaries of monthly production reports detailing the tons and rates paid by the Tenant for the month and year to date.
>>
>> (2) Development and implementation of an audit procedure and the check and balance of the tenant's production records.
>>
>> (3) Provide record-keeping and regular trust statements and monthly checks and deposits to the beneficiaries of the trust.
>>
>> (4) Overseeing and coordinating the preparation of annual trust tax returns and payment of other taxes due.
>>
>> (5) Coordinating regular beneficiary meetings to provide for an open exchange of

-7-

ideas and status of quarry operation and lease negotiation.

(6) Coordinating regular engineering reports, fly over reviews, limestone market studies and other such activities to prepare in advance for each re-open period.

(7) To review on an ongoing basis compliance by Tenant with all lease/contract terms.

47. Paragraph 6(g) of Item II of the Last Will and Testament of Eula Kathleen Jones states, in part, that the Trustee shall have the authority to

abandon, compromise, contest and arbitrate claims and demands; to institute, compromise and defend actions at law or equity; and to take any and all steps which in its discretion are deemed necessary or advisable in the protection of the trust estate and in the protection of this trust both during and after probate administration upon my estate; to employ such accountants and such legal counsel as the trustee shall deem advisable and to pay legal compensation for any services rendered by such accountants and legal counsel.

48. Paragraph 9 of the C.R. Jones Trust provides, in relevant part, that the Trustee shall have the authority to do, among other things, the following:

10. To extend the time of payment of any obligations held by the trustee and to compromise or submit to arbitration upon such terms as the trustee may deem proper or to release any claim in favor or against the Trust;

. . . .

13. To employ investment counsel, custodians of trust property, brokers, agents and attorneys;

. . . .

19. To prosecute and defend, and in the exercise of its sole discretion which shall be binding on all interested parties, to compromise, settle or abandon claims by or against the Trust.

49. KRS 386.810(3)(s) provides that a trustee has the power:

To pay or contest any claim; to settle a claim by or against the trust by compromise, arbitration, or otherwise; and to release, in whole or in part, any claim belonging to the trust to the extent that the claim is uncollectible . . . .

50. As provided in KRS 386.810(3) and the Jones Family Trusts, neither the Letter of Understanding nor the Lease with Martin Marietta limit or impair BOK's authority to pursue its proposal to resolve Martin Marietta's alleged breach. Neither the Letter of Understanding nor the Lease requires BOK to declare a breach of the Lease and seek to terminate the Lease. Under the Jones Family Trusts and KRS 386.810(3), BOK has the authority to abandon the forty-five (45) ton adjustment claim if BOK decides that it is prudent to do so.

*Id*. at 926-27.

The circuit court qualified this by also holding "that while the enforcement of any claim under the lease agreement was subject to BOK's discretion, BOK's discretion was nevertheless subject to the 'prudent investor' standard." *Id*. at 927.

> Applying its construction of the trust documents and the "prudent investor" standard against the evidence presented at trial, the circuit court found that under the circumstances it was reasonable and in the best interests of all the beneficiaries, and thus consistent with BOK's fiduciary duties as trustee, for BOK to keep the Martin Marietta lease in force in spite of Martin Marietta's alleged $104,000 royalty shortfall.

*Id*. at 927-28. "Furthermore, the circuit court instructed BOK to resume accepting and distributing royalty payments in spite of the Vander Boeghs' demand for additional investigation regarding Martin Marietta's alleged mining permit violations and the total amount of Martin Marietta's alleged royalty shortage." *Id*. at 928.

> Consequently, the circuit court held that if BOK pursued the course of action that it had originally proposed, BOK would act consistently with its fiduciary duties as trustee despite the Vander Boeghs' contentions that doing so could be regarded as a waiver of what they believed were Martin Marietta's defaults. To that end, the circuit court's judgment provided:
>
> > 1. Plaintiff, BOK, as Trustee, is instructed to receive, deposit, and distribute, in accordance with the terms of the Jones Family Trusts, all royalty payments from Martin Marietta from and after April, 2010

-10-

until and unless a contrary order of a court of competent jurisdiction directs otherwise.

2. Plaintiff, BOK, as Trustee, is instructed to: (1) request that Martin Marietta pay $104,000.00 to the Jones family Trusts for the forty-five (45) ton adjustments made during the fifteen-year period between 1995 and 2010; (2) request that Martin Marietta pay royalties to the Jones Family Trusts, making no adjustments, in the future; (3) request that Martin Marietta maintain barge records for eighteen to twenty-four months; but (4) not attempt to terminate the Lease.

3. Plaintiff, BOK, as Trustee, is instructed to use all remedies available in law and contained in the Lease, except termination of the lease, to resolve the forty-five (45) ton adjustment issue with Martin Marietta. BOK is further instructed to compromise, settle, or abandon the claim if the costs of pursing [sic] the claim are greater than the likely return.

*Id*. at 929. This Court affirmed the circuit court's judgment in an opinion rendered

February 8, 2013.[5] *Id*. at 933.

---

[5] We note that this appeal had originally been dismissed by a three-judge panel of this Court due to the Vander Boeghs' failure to serve their brief on all of the appellees (only the Bank was served). The merits panel reversed that ruling based upon a petition for reconsideration:

[W]e find that the circumstances of this case nevertheless weigh in favor of granting the Vander Boeghs' petition for reconsideration, vacating our prior order of dismissal, and instead ignoring the Vander Boeghs' deficiency and proceeding with review. This is because, upon further briefing from the parties, it no longer appears that the Armstrongs suffered any cognizable harm or prejudice as a result of the Vander Boeghs' failure to serve them.

-11-

Once the matter returned to the circuit court, litigation of Phase II began; namely, resolution of the Vander Boeghs' counterclaims. This Court decided the appeal of this phase of the litigation in *Vander Boegh v. Bank of Oklahoma, N.A.*, No. 2016-CA-001307-MR, 2019 WL 1495712 (Ky. App. Apr. 5, 2019) (*Vander Boegh II*). We explained:

> The Vander Boeghs filed counterclaims against the Bank alleging it breached its fiduciary and/or contractual duties to the Vander Boeghs and/or had negligently performed its duties as trustee. Some of the counterclaims alleged the Bank failed to comply with obligations it agreed to undertake in a letter of understanding executed prior to becoming trustee ("the Letter"), such as instituting an audit procedure of the quarry's operations. With the agreement of the parties, the trial court bifurcated the action and stayed the

---

As BOK concedes in its responsive brief, it issued copies of the Vander Boeghs' appellate brief to all beneficiaries, minus the exhibits contained in the appendix, approximately one week after the Vander Boeghs filed their brief with the Court of Appeals. In his motion to withdraw as appellate counsel, the attorney representing most of the Armstrong beneficiaries stated that "[t]he interests of the Majority Beneficiaries on appeal are congruent with and adequately protected by the Trustee, BOK, and are well represented before this Court by counsel for the Trustee [BOK]." There is no dispute that every beneficiary received this motion to withdraw. Moreover, there is no dispute that every beneficiary received the Vander Boeghs' reply brief (filed in response to BOK's appellate brief), along with the Vander Boeghs' petition for rehearing and BOK's response thereto. With that said, none of the several Armstrong Beneficiaries, throughout any of these appellate proceedings, has ever attempted to protest, let alone acknowledge, the Vander Boeghs' failure to serve them; nor have they made any attempt to file any briefs of their own in this matter. Thus, while we do not condone the Vander Boeghs' conduct, we will not presume prejudice in the face of evidence to the contrary.

*Id*. at 922.

-12-

counterclaims until resolution of the Bank's declaratory judgment action.

. . . .

The trial court then began proceedings on the Vander Boeghs' counterclaims, granting summary judgment to the Bank on some and scheduling a bench trial on the remainder. In July 2015, the Bank filed a motion for a pretrial conference, arguing among other things that the Vander Boeghs had alleged during discovery over fifty additional acts or omissions by the Bank without amending its pleadings to reflect what the Bank termed "additional counterclaims." The Vander Boeghs denied the additional alleged acts and omissions were new counterclaims, instead arguing they were only additional supporting facts and "[n]o new cause of action has been asserted."

The trial court ultimately permitted the Vander Boeghs to file an amended set of counterclaims, which they did in October 2015.

*Id*. at *2-*3.

The court held a lengthy bench trial on the counterclaims in May 2016, and about two months later issued detailed findings of fact and conclusions of law. The court concluded the breach of contract and negligence claims failed because, other than inapplicable exceptions, beneficiaries of a trust may only bring equitable claims against a trustee. The court also found the Vander Boeghs "failed to prove any basis upon which they are entitled to monetary damages or injunctive relief for breach of fiduciary duty." The Vander Boeghs then filed appeal 2016-CA-001307-MR.

*Id*. at *4.

In addition, the Bank sought to recover costs, expenses, and attorney fees from the Vander Boeghs pursuant to KRS 386B.10-040.

> In January 2017, the trial court granted the Bank's motion for costs, expenses and fees, concluding without explanation that the privilege log "adequately document[ed] the time spent and fees charged for each task." The court concluded applying KRS 386B.10-040 was proper but deducted five percent from the lodestar figure because the Bank unnecessarily had three attorneys at trial and a deposition. The court ordered the Vander Boeghs to pay $2,206,644 in attorney fees and an additional $407,915 in costs and expenses. After the trial court denied their motion to alter, amend or vacate, the Vander Boeghs filed appeal 2017-CA-000294.

*Id.* at *4 (footnote omitted).

This Court affirmed the circuit court's judgment on the breach of contract counterclaims against the Bank as to its performance as trustee, *id.* at *8, but it vacated its award of attorney fees because the circuit court did not have sufficient information to make a specific fee award. *Id.* at *12. In affirming the judgment on the Vander Boeghs' counterclaim, this Court stated, in part:

> The Vander Boeghs next contend the trial court erred by finding the Bank did not breach its duties to oversee the quarry operator's lease compliance and production records. Indeed, the Vander Boeghs contend there are "[u]ndisputed facts in the trial record" showing the Bank breached its duties. However, much of this argument is really an unsuccessful reiteration of the Vander Boeghs' previous, unavailing arguments.

-14-

*Id*. at \*7 (footnote omitted).  The footnote that appeared at the end of the above paragraph stated:

> We decline the Vander Boeghs' invitation to take judicial notice of documents from Lafarge created after this appeal was filed which purportedly show that it had incorrectly paid royalties.  The discrepancy in royalties was apparently discovered by the CPA hired by the Bank, which strengthens the Bank's argument that utilizing a review of procedures methodology was appropriate.  Regardless, we may only take judicial notice of matters not subject to reasonable dispute.  *Clay v. Commonwealth*, 291 S.W.3d 210, 217 (Ky. 2008).  The documents at issue do not so qualify, as the parties' disagreements about them show.  Moreover, we generally may not consider evidence not presented to the trial court.  *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

*Id*. at \*7 n.11.  The Supreme Court of Kentucky denied the Vander Boeghs' motions for discretionary review, and our opinion became final on February 20, 2020.

Once the matter returned to the circuit court, the parties made filings related to the Bank's motion for costs, expenses, and attorney fees, pursuant to this Court's direction on remand.  The circuit court scheduled a hearing on the pending motions for July 2, 2020, via videoconference due to the COVID-19 pandemic.

On June 18, 2020, the Vander Boeghs filed a motion to vacate the 2016 judgment pursuant to CR 60.02(d), (e), and (f).  They based their motion upon new evidence that, they argued, refuted the circuit court's conclusions and

findings, including that the quarry operator (now Lafarge) failed to comply with the lease in several ways. They stated that "[t]his evidence was concealed by the Quarry operator lessee Lafarge, and undetected principally because of BOK's breach of its fiduciary duty."

In its response, the Bank first pointed out that the Vander Boeghs failed to include any reference to an August 2017 petition filed in McCracken District Court by them and the other trust beneficiaries to remove the Bank as the trustee, in which the same issues were raised (Case Nos. 78-P-00674 and 87-P-00540). The district court held a bench trial and heard testimony about the agreed upon procedures analysis CPA Allen Priest had performed for which he issued a 2017 report as well as Mr. Priest's continued investigation until January 2018. The district court denied the petition, finding that Mr. Priest had resolved the issues identified in the 2017 report, that the agreed upon procedures he performed had worked, and that the Bank had kept the beneficiaries reasonably informed. This decision was affirmed on appeal to the McCracken Circuit Court (Case Nos. 19-XX-00001 and 19-XX-00002). The circuit court held that the Bank acted within its discretion and in the best interests of the trusts and the beneficiaries in its dealings with Lafarge.

The Bank then argued that the Vander Boeghs' CR 60.02 motion was barred by *res judicata* as it was an attempt to relitigate the issues it raised in the district court action. They stated:

> The issue of the adequacy of the agreed upon procedures performed by Allen Priest, and BOK's actions as Trustee in response to his Report, were the most important part of the District Court action. They are also the basis of this Motion to Vacate. The same issues were litigated in District Court and decided in BOK's favor. The issues were necessary to the District Court's ruling. The issues may not be re-litigated here.

The Bank next argued that there was no mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud to support relief under CR 60.02. It also raised the reasonable time requirement as a factor to be taken into consideration.

The CR 60.02 proceedings were delayed when Gary Vander Boegh and Glenn Jones, two of the defendants below who are not parties to this appeal, moved to disqualify the circuit court judge. The Supreme Court denied the motion to disqualify in July 2020.

Once the stay was lifted, the parties entered into an agreed scheduling order that permitted the Vander Boeghs to file an amended motion to vacate and scheduled a hearing for September 30, 2020. At the hearing, the court would consider several motions, including a motion to withdraw as counsel for Gary Vander Boegh and Glenn Jones, the amended CR 60.02 motion to vacate, the

motion for costs and attorney fees incurred and paid during the appeals, and the

motion for discovery of the Bank's submissions related to the fee motion.

The Vander Boeghs filed their amended CR 60.02 motion on August

20, 2020. They stated:

> As this Court is aware from the trial held in this matter, Trustee BOK engaged an accountant to perform "Agreed Upon Procedures" only, and not an audit, as a means of oversight of the operator of the Three Rivers Quarry (Quarry). This decision was contrary to the wishes of the Vander Boegh Counter-Plaintiffs, who are the beneficiaries of the Jones Trusts that own the Quarry. BOK had entered into a Letter of Understanding (LOU) with the Vander Boeghs in which BOK agreed to perform an audit. Subsequently to the signing of the LOU and BOK commencing its duties as Trustee, BOK repeatedly misrepresented to the beneficiaries that an audit was being performed, even after it had entered in a contract with Cotton & Allen to perform only "Agreed Upon Procedures."

> This decision to use "Agreed Upon Procedures" rather than an audit is confirmed by the May 12, 2008 engagement letter between BOK and its contractor Cotton & Allen, which provides that the scope of work to be performed was not an audit and could not be relied upon to detect any errors, fraud or illegal acts by the operator of the Quarry. Cotton & Allen's report of January 16, 2009 confirmed that "[w]e were not engaged to and did not perform an audit, the objective of which would be the expression of an opinion on the amounts of tonnages reported by Martin Marietta and the calculation of royalty payment."

> Mr. Priest, who performed this contracted oversight work for BOK testified: "We were not providing any formal opinion on amounts or tonnages at

-18-

all." Mr. Priest also testified that he had no opinion on whether limestone is being stolen from the Quarry without the payment of a royalty. Further, BOK's own Christopher Rooker and its expert, Priest, admitted no one reviewed the Quarry's "production records" as expressly required by the LOU.

This Court concluded that BOK had engaged Cotton & Allen to verify that the Jones Trusts were paid the proper amount of royalties; and that the Cotton & Allen "Agreed-Upon Procedures" satisfied the LOU requirement for an audit procedure and check and balance on the operator's production records; and involved the same procedures as an audit. The Circuit Court also found that the Quarry Lease required payment of royalties at the point in time when limestone was shipped or removed from the Quarry, and that there was no evidence of an operator systematically failing to pay royalties for limestone as it "departs said lands [Quarry] by truck, barge or any other means."

(Footnotes omitted.)

The Vander Boeghs went on to state that new evidence refuted the circuit court's conclusions and findings. They asserted that the Quarry operator, Lafarge, had failed to comply with the lease, including the requirement to pay royalties for all limestone at the time it was shipped from the quarry:

Post-trial admissions from BOK and Lafarge in these Trustee records, of which the Court of Appeals declined to take judicial notice, show that Lafarge for six years (from day one of Lafarge's Quarry operation in December 2011 through December 2017) never paid royalties to the Jones Trusts at the time that mined limestone departed from the Quarry. These Trustee records include key fact admissions by both Lafarge and BOK.

-19-

BOK acknowledged this Lafarge practice in these documents for the first time, between *sixteen and eighteen* months after this Court's trial. BOK now acknowledges this practice violated the lease. These post-trial records show that Lafarge's lease breach was not an isolated or inadvertent incident. It was Lafarge's standard operating procedure – an on-going, systematic and knowing pattern of (daily) lease violations that occurred prior to, during, and after the Phase II trial in this matter.

BOK claims now to have finally discovered this chronic pattern of royalty payment violations and to have confronted Lafarge, but only long after this Court's judgment. As recently as March 2020, BOK disclosed to the trusts' beneficiaries the subsequent Agreed-Upon Procedures Report by Allen Priest, for Quarry operation years 2016-2017. This Priest accountant's report confirms that for this later engagement period Lafarge was still not paying royalties at the time the stone departed the Quarry by barge but rather was paying royalties based on the "delivery date" (the date the stone arrived at its downstream destination), a practice that had been documented as occurring through 2014-2015 (and apparently prior) in Priest's earlier November 14, 2017 report. In Priest's February 5, 2018 letter to Denise Cramer of BOK, Priest states "We have confirmed that the quarry operator was paying royalty based on the invoice date rather than the date the stone left the quarry. This is in violation of the lease."

(Citations to the record omitted.)

The Vander Boeghs then discussed reports issued by Mr. Priest in 2017 and 2020 and stated:

These BOK review of procedures reports paint a clear pattern of Lafarge's lease violations: six years of continuous non-payment of royalties until the stone was

-20-

delivered or "sold," contrary to the Quarry lease; numerous data entry errors in Lafarge records, shipment tracking issues including entire barges that Priest was unable to trace to a royalty payment; and Lafarge's failure to preserve its written records of barge loading measurements until the accountant's review.

Each of these breakdowns in BOK's oversight and supervision of the Quarry operator's lease compliance reflect either clear breaches of duty, or at a minimum raise material questions of the trustee's performance of its duties. The underlying pattern of Lafarge's lease violations that reflect these breaches of duty were unknown to the Vander Boegh Counter-Plaintiffs during and prior to trial (because BOK had either failed to disclose them, or had failed to timely discover them). At best, BOK's Agreed-Upon Procedures methods were demonstrably inadequate, and its expert's analysis proves those procedures were insufficient for, or were incapable of, detecting Lafarge's prevailing non-compliance with the Quarry lease.

The Vander Boeghs stated that the Bank had not disclosed the pattern of breaches by the operator to them until January 16, 2018, after the circuit court had rendered its 2016 judgment and while their appeal in this Court was pending. They noted that this Court declined to take judicial notice of the "newly disclosed records" or to consider the legal or evidentiary significance of this evidence.

Based upon these allegations, the Vander Boeghs alleged fraud affecting the proceedings pursuant to CR 60.02(d) as perpetrated by Lafarge, the Bank, or both. The concealment prevented them from fully and fairly presenting their counterclaims or any other claims that they were not aware of. They

specifically argued that the ongoing lease violations "involved systematic and knowing removal of limestone from the Quarry by the operator for years without paying royalties as required by the lease. That is, Lafarge's conduct involved unauthorized removal [of] limestone which constitutes willful trespass under Kentucky law." This, they stated, would entitle them to substantial damages. They also alleged, pursuant to CR 60.02(e) and (f), that the prior judgment and orders should be vacated as it was no longer equitable that they should have prospective application and for reasons of an extraordinary nature.

The Bank filed a response to the amended CR 60.02 motion, again arguing that it was untimely, that the issues raised in it (whether the new evidence established that the Bank had breached its fiduciary duties) had already been litigated and were subject to collateral estoppel, and that the Vander Boeghs had not satisfied their burden to obtain relief.

In reply, the Vander Boeghs argued that the doctrine of collateral estoppel did not apply for various reasons (including that the district court litigation did not qualify as a prior litigation), that the amended motion was timely as it was filed within a reasonable time, and that they had satisfied their burden for relief.

The court held a hearing on the pending motions on September 30, 2020, and on October 27, 2020, it entered an order denying the Vander Boeghs'

amended motion to vacate. The circuit court described their arguments thusly: "They contend BOK should have discovered Lafarge's default sooner, and BOK should have sued Lafarge for 135 million dollars for trespass or sued to terminate the lease. . . . [T]his was a breach of trust[.]" However, the circuit court disagreed and held that the motion was not timely filed, that there was no evidence of fraud affecting the proceedings, and that there was no other basis to vacate the 2016 judgment. This appeal now follows.

Before we may reach the merits of the appeal, we must address a procedural issue the Bank raised in its brief and the Vander Boeghs raised in their motion to file a corrected appendix to their brief. In its brief, the Bank noted that the appendix to the Vander Boeghs' brief did not contain four of the items listed in the index of the appendix, including the October 27, 2020, order from which the appeal was taken. This, the Bank argues, constitutes a violation of CR 76.12(4)(c)(vii), which states that "[t]he appellant shall place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court." The other documents missing from the appendix are the July 28, 2016, judgment, the amended CR 60.02 motion to vacate, and the reply to the Bank's response. It appears that the only documents included in the appendix were the exhibits to the amended CR 60.02 motion to vacate, which appears to be a clerical mistake in putting the brief together. While we are hesitant

to grant the Vander Boeghs' motion to file a corrected appendix for the reasons set forth in the Bank's brief, including numerous compliance issues with the Vander Boeghs' briefs filed in multiple previous appeals, we shall grant the motion by separate order.

The Bank also asserts, in both its brief and its objection to the motion, that the Vander Boeghs violated CR 76.12(4)(c)(iv) by making:

> factual assertions in their Statement of the Case concerning BOK's alleged knowledge of the newly discovered evidence prior to the Phase II trial and alleged concealment of the newly discovered evidence by BOK and Lafarge without any citation to the record. The reason the Vander Boeghs do not reference the record is because the allegations are not true and, therefore, no such record cites exist.

The Vander Boeghs again referred to this information in their reply brief. Our review of the attachments to the amended CR 60.02 motion confirms the Bank's argument that evidence of these factual assertions of its knowledge prior to the Phase II trial and concealment does not appear in the record. Therefore, we shall not consider these alleged factual assertions in our review.

As a result of these CR 76.12 violations, the Bank urges this Court to apply the manifest injustice standard of review to the Vander Boeghs' appeal. In support of this argument, the Bank cites to *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010), which provides:

Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only, *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990).

It is a dangerous precedent to permit appellate advocates to ignore procedural rules. Procedural rules "do not exist for the mere sake of form and style. They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination. Their importance simply cannot be disdained or denigrated." *Louisville and Jefferson County Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977)). Enforcement of procedural rules is a judicial responsibility of the highest order because without such rules "[s]ubstantive rights, even of constitutional magnitude, . . . would smother in chaos and could not survive." *Id.*

While we will not consider the factual allegations that are not in the record, as set forth above, we shall proceed with our normal review of the circuit court's ruling on the CR 60.02 motion.

Our standard of review is set forth in *Louisville Mall Associates, LP v. Wood Center Properties, LLC*, 361 S.W.3d 323, 335 (Ky. App. 2012):

The decision to deny a CR 60.02 motion is vested in the trial court's sound discretion and for that reason, "decisions rendered thereon are not disturbed unless the trial judge abused his/her discretion." *Kurtsinger v. Bd. of Trustees of Ky. Ret. Sys.*, 90 S.W.3d 454, 456 (Ky. 2002); *Bethlehem Minerals Co. v. Church and Mullins Corp.*, 887 S.W.2d 327, 329 (Ky. 1994). The test for abuse of discretion is "whether the trial judge's decision

-25-

was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Relief pursuant to CR 60.02 is an extraordinary remedy which should be cautiously granted. *Baze v. Commonwealth*, 276 S.W.3d 761, 765 (Ky. 2008); *Brozowski v. Johnson*, 179 S.W.3d 261, 263 (Ky. App. 2005). The rule may be invoked in six particular instances: "(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence; (c) perjury or falsified evidence; (d) fraud affecting the proceedings; (e) the judgment is void; or (f) any other reason of an extraordinary nature justifying relief." *Kurtsinger*, 90 S.W.3d at 456. A chief factor guiding the grant of CR 60.02 relief is the moving party's inability to present his claim prior to the entry of the order sought to be set aside. *Fortney v. Mahan*, 302 S.W.2d 842, 843 (Ky. 1957); *Brozowski*, 179 S.W.3d at 263 (explaining CR 60.02 serves a dual purpose: "to bring before a court errors which (1) had not been put into issue or passed on, and (2) were unknown and could not have been known to the moving party by the exercise of reasonable diligence and in time to have been otherwise presented to the court").

And as we explained in *Ipock v. Ipock*, 403 S.W.3d 580, 583 (Ky. App. 2013),

[T]he denial of a motion to alter, amend or vacate is subject to the abuse of discretion standard. *See William C. Eriksen, PSC v. Kentucky Farm Bureau Mutual Ins. Co.*, 336 S.W.3d 909, 911 (Ky. App. 2010). Thus, it must be determined whether the trial court's decision was "'arbitrary, unreasonable, unfair or unsupported by sound legal principles.'" *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (*quoting Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)). While reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly, *see Gullion v. Gullion*, 163 S.W.3d 888 (Ky. 2005), an

appellate court should affirm the trial court unless there has been an abuse of discretion resulting in a "flagrant miscarriage of justice." *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983).

As noted above, CR 60.02 permits a court to relieve a party from a final judgment under certain circumstances:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds:  (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

In *McQueen v. Commonwealth*, 948 S.W.2d 415 (Ky. 1997), the Supreme Court of Kentucky addressed the purpose of CR 60.02:

> [CR] 60.02 is not intended merely as an additional opportunity to relitigate the same issues which could "reasonably have been presented" by direct appeal or RCr 11.42 proceedings.  [Kentucky Rules of Criminal Procedure (RCr)] 11.42(3); *Gross v. Commonwealth*, *supra*, at 855, 856.  The obvious purpose of this principle is to prevent the relitigation of issues which either were

or could have been litigated in a similar proceeding. As stated in *Gross*, CR 60.02 was enacted as a substitute for the common law writ of coram nobis.

> The purpose of such a writ was to bring before the court that pronounced judgment errors in matter of fact which (1) had not been put into issue or passed on, (2) were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to have been otherwise presented to the court, or (3) which the party was prevented from so presenting by duress, fear, or other sufficient cause. BLACK'S LAW DICTIONARY, *Fifth Edition*, 487, 144.

*Id*. at 856. In summary, CR 60.02 is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings.

*McQueen*, 948 S.W.2d at 416.

In their amended CR 60.02 motion, the Vander Boeghs stated that they were seeking relief under subsections (d), (e), and (f), which must be made within a reasonable time. The circuit court, however, concluded that the basis of the Vander Boeghs' motion was newly discovered evidence under CR 60.02(b), which must be brought within one year of the entry of the judgment. Because the motion was filed almost four years after the entry of the 2016 judgment, the motion was deemed untimely and was therefore denied. In addition, the circuit court held that the Vander Boeghs did not file their motion within a reasonable time under the subsections they cited.

-28-

The Vander Boeghs first argue that the circuit court erred in treating their motion as if it came under CR 60.02(b) rather than under subsections (d), (e), and (f). However, we agree with the Bank that their allegations address the evidence of Lafarge's limestone shipment records, which falls under CR 60.02(b) (newly discovered evidence), and how these records contradict the trial testimony of Lafarge's representative, which falls under CR 60.02(c) (perjury). Both of these subsections require the motion to be brought within one year, which did not happen in the present case as the CR 60.02 motion was not filed until 2020, making it untimely.

The Bank also argues that the Vander Boeghs impermissibly based their CR 60.02 motion on subsections (d), (e), and (f) to avoid the one-year limitations period. In *Asset Acceptance, LLC v. Moberly*, 241 S.W.3d 329, 332 (Ky. 2007), the Supreme Court of Kentucky stated:

> CR 60.02(f), the subsection permitting relief "within a reasonable time" for "any other reason of an extraordinary nature," is to be invoked "only with extreme caution, and only under most unusual circumstances." *Cawood v. Cawood*, 329 S.W.2d 569, 571 (Ky. 1959). It is available only for reasons "not otherwise set forth in the rule," *Commonwealth v. Spaulding*, 991 S.W.2d 651, 655 (Ky. 1999), and ought not to be invoked so as to undermine the time constraints applicable to the other subsections.

*See also Alliant Hosps., Inc. v. Benham*, 105 S.W.3d 473, 478-79 (Ky. App. 2003) ("Subsection (f) of CR 60.02, the catchall provision, can apply only if none of that

rule's specific provisions applies. . . . [S]ubsection (f) was not intended to provide a means for evading the strictures of the other subsections."); *Copley v. Whitaker*, 609 S.W.2d 940, 942 (Ky. App. 1980) ("We cannot escape the fact, however, that the essence of the Copleys' allegations of fraud pertain to perjury and falsified evidence. When such is the basis for relief, the one-year limitation applies."). We agree with the Bank that the Vander Boeghs' CR 60.02 motion is based upon newly discovered evidence, as the circuit court concluded, and perjury, as the Bank argued. Therefore, their CR 60.02 motion was not timely filed.

Even if the one-year limitations period for motions under CR 60.02(d), (e), or (f) applied, we also hold that the circuit court did not abuse its discretion in finding that the motion was not filed within a reasonable time. The circuit court explained its reasoning as follows:

> Here, more than four years have elapsed since the rendering of the final judgment in this case. Over two-and-a-half years have passed since the report of Lafarge's default. Over one-and-a-half years have elapsed since the Court of Appeals issued its holding. Finally, although not necessarily dispositive of the "reasonable time" consideration, this litigation has now exceeded ten years in length, including two appeals.

In *Carroll v. Carroll*, 569 S.W.3d 415 (Ky. App. 2019), we explained that in determining whether a motion was brought within a reasonable time, "a court may consider whether the facts supporting the motion 'were unknown and could not have been known to the party by the exercise of reasonable diligence and in time to

have been otherwise presented to the court[.]'" *Id.* at 418 (quoting *Gross*, 648 S.W.2d at 856). As the Bank argues, nothing prevented the Vander Boeghs from obtaining the limestone shipment records to use during the Phase II trial or from filing their CR 60.02 motion once they received Mr. Priest's 2017 report while the appeal of the 2016 judgment was pending. We also note that the Vander Boeghs chose, instead, to introduce this newly discovered evidence in their unsuccessful district court action to remove the Bank as trustee. We hold that the circuit court acted well within its discretion in determining that the CR 60.02 motion was not filed within a reasonable time.

And even if we were to reach the merits of the CR 60.02 motion, we agree with the Bank that the Vander Boeghs failed in their burden to establish that they were entitled to relief. We agree with the circuit court's reasoning as to why the Vander Boeghs were not entitled to relief under CR 60.02(d), (e), or (f), which we shall set forth hereinbelow:

> To prove fraud in Kentucky, it is necessary to show the misrepresentation of a material fact or inducement. *K.W. v. J.S.*, 459 S.W.3d 399, 402 (Ky. Ct. App. 2015). There is no evidence that BOK acted fraudulently here. Indeed, the defendants essentially concede as much, asserting that the fraud was perpetrated "either by the Quarry operator Lafarge, the Trustee BOK, or both," and elsewhere stating that "[t]he extent BOK was involved in this fraud would require discovery to determine."

-31-

Despite the admission that they don't have any evidence to prove that BOK knowingly concealed Lafarge's default, the Vander Boeghs contend that BOK's "failure to conduct effective oversight of Lafarge's lease compliance to discover this evidence" makes it complicit in Lafarge's fraud. This is not so. Instead, the evidence as to BOK's conduct shows that, shortly after the judgment in its favor, BOK: (1) hired a CPA to perform an agreed upon procedure and ensure that reported limestone tonnage was accurate, (2) promptly notified the beneficiaries as to the underpayment of royalties that was uncovered therein, and (3) thereafter properly recovered payment from Lafarge for the full amount of the delayed royalties. This is not evidence of BOK's fraud. If anything, it is evidence of the opposite assertion: i.e., that BOK was appropriately fulfilling its duties as a fiduciary. For this reason, CR 60.02(d) is not an applicable ground for vacating the judgment.

The Vander Boeghs are also not entitled to relief from the judgment under CR 60.02(f), the statute's "catch-all." According to that provision, a motion to vacate judgment will be granted if the reason is "of an extraordinary nature justifying relief."

. . . .

After a lengthy trial, this Court dismissed the Vander Boeghs['] multiple counterclaims in part on the grounds that Section 11 of the C.R. Jones Trust established a "bad faith" standard against which the trustee's actions were to be judged. In defining bad faith, this Court determined that "[n]egligence or a simple error in judgment . . . does not establish bad faith." Ultimately, this Court ruled that the Vander Boeghs failed to prove that "BOK breached its duty to act 'as a prudent investor would' and exercise 'reasonable care, skill and caution'" – the common standard for breach of trust actions – much less that BOK acted in bad faith

according to Section 11 of the C.R. Jones Trust. This judgment, and the legal reasoning behind it, was affirmed by the Court of Appeals. 2019 WL 1495712 at *12.

There is nothing about the newly discovered evidence that would, "with reasonable certainty," have changed the result of the original trial. [*Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996).] Further, as described above, the record reveals that BOK acted promptly in recovering the full amount of withheld payments, and kept the fiduciaries abreast of its activity every step of the way. Thus, there is no evidence that BOK failed to act as a prudent investor would or that it failed to exercise "reasonable care, skill and caution." The circumstances in this case are not "of an extraordinary nature justifying relief." Moreover, as BOK notes in its response to the motion, the Vander Boeghs are therefore not entitled to relief under CR 60.02(e) for the same reasons: it is not inequitable for this Court's previous judgement [sic] to have prospective application.

Our review satisfies us that the circuit court did not abuse its discretion in denying the Vander Boeghs' motion for CR 60.02 relief as untimely filed or in finding no merit in the arguments they presented in their motion.

For the foregoing reasons, the October 27, 2020, order of the McCracken Circuit Court denying the Vander Boeghs' motion for CR 60.02 relief is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Christopher B. Rambicure
Bradley H. Strait
Louisville, Kentucky

BRIEF FOR APPELLEE:

John W. Bilby
Louisville, Kentucky

Shannon A. Singleton
Anthony J. Phelps
Lexington, Kentucky